# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# HARRISONBURG DIVISION

| | |
|---|---|
| BEATRICE QUIRK, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 5:20-cv-00108 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| WALMART, INC., ) | By:   Hon. Thomas T. Cullen |
| ) | United States District Judge |
| Defendant. ) | |

Plaintiff Beatrice Quirk, a former employee of Defendant Walmart, Inc., brought this lawsuit under Title VII of the Civil Rights Act, alleging that Walmart discriminated against her on the basis of sex. Walmart now moves for summary judgment on Quirk's remaining claim for promotional discrimination. Quirk has failed to establish a *prima facie* case of discrimination and meet her burden under the *McDonnell Douglas* burden-shifting scheme. As such, Quirk has not demonstrated any genuine issue of material fact, and the court will therefore grant Walmart's motion for summary judgment.

## I.   BACKGROUND

### A.   Procedural Posture

In 2004, the United States District Court for the Northern District of California certified a class of approximately 1.5 million people to sue Walmart for alleged discrimination on the basis of sex. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 343, 346–47 (2011). The Supreme Court overturned this class certification in 2011, requiring the plaintiffs to proceed individually. *See id.* at 367. As a result, Quirk filed a charge of discrimination with the EEOC,

and then filed suit in this court in 2019.[1]

**B.     Undisputed Facts**

    **1.     Quirk's Employment History**

Quirk worked at various Walmart stores between July 1994 and July 1999. She started at Store 1345 in South Boston, Virginia, as an hourly sales associate. (Decl. of Lisa Riley ¶ 10, Jan. 22, 2021 [ECF No. 4-1]; Dep. of Beatrice Quirk at 19:3–9, Aug. 17, 2020 [ECF No. 4-2].) In 1995, Quirk transferred to Store 1833 in Fredericksburg, Virginia, accepting a position as a Cashier and Customer Service Associate. (Riley Decl. ¶ 11.) In March 1997, she applied and was selected for a Photo Lab Tech position. (*Id.*) Quirk resigned approximately one year later in April 1988, when she moved to Massachusetts. (*Id.* at ¶ 12.)

    The following month, Quirk was rehired at Store 2095 in Wareham, Massachusetts, again as a Photo Lab Tech. (*Id.* ¶ 13.) Several months later, in October 1998, she transferred to Store 2520 in Fredericksburg, Virginia, where she remained a Photo Lab Tech. (*Id.* at ¶ 13; Quirk Dep. 27:1–30:8.) There, Quirk applied for the Photo Lab Manager position but was not selected. (Quirk Dep. 33:23–34:23.) In July 1999, Quirk resigned after accepting another job. (Riley Decl. ¶ 13.) In total, Quirk worked for Walmart for approximately five years, and served as a Photo Lab Tech for approximately two-and-a-half years.

---

[1] Quirk originally filed suit along with seven other plaintiffs. *See* Complaint, *Medeiros v. Wal-Mart, Inc.*, 434 F. Supp. 3d 395 (W.D. Va. 2020) (No. 5:19-cv-00037). In January 2020, the Honorable Michael F. Urbanski granted in part and denied in part Walmart's motion to dismiss. *Medeiros v. Wal-Mart, Inc.*, 434 F. Supp. 3d 395, 419 (W.D. Va. 2020). Relevant here, Chief Judge Urbanski dismissed Quirk's claim for pay discrimination and all of the plaintiffs' claims for disparate impact discrimination. *Id.* Only five plaintiffs remained in the lawsuit. As to Quirk, only her claim for promotional discrimination survived. The court later severed the remaining claims as to each plaintiff, and Quirk's case was assigned a new case number. (*See* ECF No. 1.)

### 2. Promotional Discrimination Facts

When Quirk transferred from Massachusetts to Store 2520 in October 1998, the Photo Lab Manager there was Elizabeth Sellen. (*Id.* ¶ 14.) Sellen left Walmart in January 1999, creating a management vacancy in the photo lab. (*Id.* ¶ 15.) Quirk applied and interviewed for the Photo Lab Manager position but did not receive it. The Photo District Manager named Ray (last name unknown)—the person tasked with filling the position—selected a male employee named Colon Dudley instead. (*Id.* ¶ 16.) When Quirk asked Ray why she did not get the position, Ray informed her that he hired Dudley because "he felt that [Dudley] had more control over the employees than [Quirk] would have, [and] that [Quirk] would be too easy on [the employees]." (Quirk Dep. at 35:8–11.) Further, both Ray and Dudley were ex-Marines. (*Id.* at 35:8–17.) In Dudley's declaration, he recalled that "[d]uring my interview, Ray asked me about my prior leadership experience, and I described my six years of experience [as] a Team Leader, supervising a team of Marines." (Decl. of Colon Dudley ¶ 8, Jan. 22, 2021 [ECF No. 4-4].)

At the time she applied, in January 1999, Quirk had almost two years of experience as a Photo Lab Tech in various stores. Dudley, on the other hand, only had several months' experience in the photo lab. Specifically, Dudley started working for Walmart in September 1998 at Store 2438 in Garrisonville, Virginia. (Dudley Decl. ¶ 4; Riley Decl. ¶ 17.) He was hired as a Sales Associate but became a Photo Lab Tech in October 1998. (Riley Decl. ¶ 17.) There, he "learned how to operate the equipment in the Photo Lab, and [he] gained a general understanding of how the Photo Lab department worked." (Dudley Decl. ¶ 5.) Dudley resigned from Store 2438 approximately three months later, in January 1999. (Riley Decl. ¶

18.) Approximately one month later, in February 1999, he applied for and received the Photo Lab Manager position (over Quirk) at Store 2520. (Dudley Decl. ¶ 8; Riley Decl. ¶ 18.) After he was hired, Dudley attended corporate training for "management of Walmart associates, instruction on how to use new Photo Lab equipment, proper disposal of chemicals used in the Photo Lab, and techniques for promoting Photo Lab products and services." (Dudley Decl. ¶ 9.) Despite this, Quirk claims that she actually trained Dudley on how to run the photo lab. (Quirk Dep. at 37:16–38:5.) Dudley remained the Photo Lab Manager at Store 2520 for only four months; he was terminated in June 1999 "when he did not accept an offer of employment following a suspension." (Riley Decl. ¶ 19.) A female named Amy Angel-Poznanski replaced Dudley as Photo Lab Manager at Store 2520. (*Id.* ¶ 21.)

Within the "Photo District" in which Store 2520 was located, a total of 58 Walmart associates held Photo Lab Manager positions between December 26, 1998 and December 31, 2000. (*Id.* ¶ 20.) Of those 58 Photo Lab Managers, 40 were female, and 18 were male. (*Id.*)

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . [any] affidavits" filed by the parties. *Celotex*, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If that burden has been met, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Glynn*, 710 F.3d at 213 (citing *Bonds v. Leavitt*, 629 F.3d 369, 380 (4th Cir. 2011)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. The nonmoving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" *Glynn*, 710 F.3d at 213 (quoting *Anderson*, 477 U.S. at 252). The nonmoving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "In other words, to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990) (citing *Anderson*, 477 U.S. at 248).

### III.  ANALYSIS

Quirk's only remaining claim is for promotional discrimination. She specifically alleges that she was discriminated against on the basis of sex when she was not selected for the Photo Lab Manager position at Store 2520.

There are two ways for a plaintiff to defeat a motion for summary judgment under Title VII for a disparate treatment claim: (1) "provid[ing] direct evidence of a purpose to discriminate or circumstantial evidence of sufficiently probative force to raise a genuine issue of material fact"; or (2) relying on the burden-shifting scheme in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996). The parties agree that Quirk does not rely on direct evidence, and that the *McDonnell Douglas* framework applies to this case. (*See* ECF No. 13 at 12 (Plaintiff: "Because Quirk does not rely on direct evidence, the *McDonnell Douglas* framework must be applied to her claims.")).

Under *McDonnell Douglas*, the plaintiff must first establish a *prima facie* case of sex discrimination. *McDonnell Douglas*, 411 U.S. at 802. To establish a *prima facie* case of promotional discrimination, a plaintiff must show that: "(1) she is a member of a protected class; (2) her employer had an open position for which she applied or sought to apply; (3) she was qualified for the position; and (4) she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." *Evans*, 80 F.3d at 959–60. The plaintiff must establish her *prima facie* case by a preponderance of the evidence. *Id.* at 959. If a plaintiff succeeds, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* Finally, if the defendant does so, the burden shifts back to the plaintiff to show that the defendant's proffered reason is pretextual. *Id.*

Quirk's *prima facie* case fails under the fourth element, which requires her to demonstrate that her application was rejected under circumstances implying unlawful discrimination. When a plaintiff, like Quirk, relies on a similarly situated employee, referred to under Title VII as a comparator, to show a *prima facie* case of discrimination, that comparator

6

must be similarly situated "in all relevant respects." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010). For this inquiry, courts consider whether the plaintiff and comparator had the same job description and were subject to the same standards; whether they had comparable experience, education, qualifications, and performance; and whether they had the same supervisor(s). *See Spencer v. Va. State Univ.*, 919 F.3d 199, 207 (4th Cir. 2019); *Gary v. Facebook, Inc.*, 822 F. App'x 175, 180–81 (2020); *see also David v. Winchester Med. Ctr.*, No. 5:16-cv-00063, 2018 WL 310140, at *12 (W.D. Va. Jan. 5, 2018).

No rational factfinder could find that Dudley is a proper comparator. It is undisputed that Dudley had six years of experience as a Team Leader in the United States Marine Corps, where he managed 8–12 soldiers. While Quirk had prior experience as a Photo Lab Tech, the record shows that she did not have any managerial experience prior to applying for the Photo Lab Manager position. Dudley's prior experience and Quirk's lack thereof make Dudley an improper comparator, because they are not similarly situated in a critical respect. Quirk's *prima facie* case falters on these grounds.

But even if Quirk could show a *prima facie* case of discrimination, Walmart has articulated a legitimate, nondiscriminatory reason for hiring Dudley over Quirk: Dudley had prior management experience, and Quirk did not. The evidence is undisputed on this point. According to Quirk, Ray told her that she did not get the position because Dudley, based on his prior experience with the Marine Corps, would have more control over the employees than she would. Further, Dudley stated in his declaration that Ray asked him about his management experience in the Marine Corps.

Finally, Quirk can offer no evidence that Walmart's reasoning is pretextual.[2] Indeed, Quirk cannot identify any facts from which a jury could infer that gender was the motive for hiring Dudley over Quirk. Quirk claims that because she had worked at Walmart for longer, and had more photo-lab experience, that the hiring decision must have been based on gender. But this is an unsupported opinion that non-managerial experience in operating photo equipment is more important than managerial experience. Such opinions fail to pass muster on summary judgment. *See Williams v. Giant Food, Inc.*, 370 F.3d 423, 433 (4th Cir. 2004) ("[The plaintiff's] testimony . . . is merely a self-serving opinion that cannot, absent objective corroboration, defeat summary judgment.").

Quirk also attempts to substitute her own hiring criteria for the employer's criteria by elevating photo-lab experience over management experience. Walmart correctly argues that this is legally impermissible. *See Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 269 (4th Cir. 2005) ("[The plaintiff] cannot establish her own criteria for judging her qualifications for the promotion. She must compete for the promotion based on the qualifications established by her employer."). The only evidence in the record about the motives behind the hiring decision—Quirk's testimony about what Ray told her and Dudley's recollection from that interview—conclusively establishes that it was based on prior leadership experience, and

---

[2] Instead, Quirk's opposition to Walmart's motion heavily relies on arguments regarding disparate *impact* litigation, not disparate *treatment*. (*See* ECF No. 13 at 11 ("[T]here is at least a question of fact as to whether the deference allowed to managers in hiring decisions could have resulted in discriminatory . . . promotional practices that affected Quirk's candidacy."); *see also id.* at 12 ("Wal-Mart's deference to managers [*sic*] decision-making ability for awarding pay led to disparate impact on female managers."); *see also id.* ("In appropriate cases, giving discretion to lower-level supervisors can be the basis of Title VII liability under a disparate impact theory.").) But Quirk's disparate impact claim has been dismissed from this case, rendering these arguments moot.

not tenure in the photo lab (or anything else).

Finally, Quirk suggests that Walmart's proffered reasons for promoting Dudley—his prior leadership experience in the Marine Corps—is pretextual and suggests impermissible gender bias and stereotyping. Although the undisputed record reflects that Ray hired Dudley because he was a former Marine, it does not follow that Ray hired Dudley because he was male. As Walmart duly notes, the Marine Corps is composed of both sexes. Moreover, this argument overlooks the undisputed fact that Dudley's predecessor and successor Photo Lab Managers at Store 2520 were both female, and that out of the 58 Photo Lab Managers in Quirk's district, 40 (or 69 percent) were female.

In sum, Quirk's promotional discrimination claim fails under the *McDonnell Douglas* burden-shifting scheme because Dudley is an improper comparator and Quirk cannot offer any evidence that Walmart's proffered reason is pretextual. Thus, the court will grant Walmart's motion for summary judgment on Quirk's promotional discrimination claim.

### IV. CONCLUSION

For the above reasons, the court will grant Walmart's motion for summary judgment (ECF No. 3). A separate order will issue.

The court directs the Clerk to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 4th day of May, 2021.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE